TALIS J. COLBERG
ATTORNEY GENERAL

Jan A. Rutherdale
Assistant Attorney General
Office of the Attorney General
P.O. Box 110300
Juneau, Alaska 99811
(907) 465-3600
Attorney for State of Alaska
Alaska Bar No. 8308081

## UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| KALTAG TRIBAL COUNCIL, and<br>HUDSON AND SALINA SAM,<br>　　　　　　Plaintiffs,<br><br>vs.<br><br>KARLEEN JACKSON, in her official<br>capacity as Commissioner of Alaska<br>Department of Health and Social Services;<br>BILL HOGAN, in his official capacity as<br>Deputy Commissioner of Alaska<br>Department of Health and Social Services;<br>and PHILLIP MITCHELL, in his official<br>capacity as Section Chief of the Alaska<br>Bureau of Vital Statistics,<br><br>　　　　　　Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>Case No. 3:06-CV-00211 (TMB) |

## MEMORANDUM OF POINTS AND AUTHORITIES
## IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT

### Introduction

This is a motion for summary judgment of dismissal of this suit on the

following grounds: First, the Defendants ask this Court to dismiss the action because the

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT　　　　　　　PAGE 1 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*　　　　　　　　　　　　Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB　Document 32　Filed 05/15/07　Page 1 of 32

Plaintiffs are prohibited from bringing this lawsuit by the Eleventh Amendment of the United States Constitution. Although the *Ex Parte Young* exception allows state officials to be sued for declaratory and injunctive relief, that exception is not available here because of the impact the suit has on the state's special sovereign interests.

Alternatively, the Defendants ask this Court to dismiss the action because Native Village of Kaltag ("Kaltag tribe"), a reservation-less tribe that has not been granted exclusive jurisdiction by the federal government, does not have the authority to initiate child protection proceedings. Therefore, the Plaintiffs are not entitled to an amended birth certificate pursuant to the full faith and credit clause in Subsection 1911(d) of the Indian Child Welfare Act ("Act" or "ICWA"), although they could receive an amended birth certificate through the cultural adoption process.

### Statement of Facts

On October 18, 1999, N.S. was born to G.S., a member of Kaltag tribe, and A.L., who is not a member of Kaltag tribe.[1] On September 3, 2000, a "Tribal Family Youth Specialist" ("Kaltag TFYS worker"), who is an employee of Plaintiff Kaltag Tribal Council ("Kaltag"), took emergency custody of N.S. due to her mother's inability to care for N.S. and a likelihood of physical injury.[2] On September 6, 2000, the Kaltag court took temporary custody of N.S., and N.S. continued in the temporary custody of Kaltag court until July 29, 2004, when the Kaltag court terminated the parental rights of both parents, made N.S. a ward of the court, and granted permanent guardianship to Plaintiffs Hudson and Selina Sam, who had been N.S.' foster parents since her placement with them on April 2004.[3] On October 17, 2005, the Kaltag court issued an Order of Adoption granting the petition.[4]

---

[1]  Complaint at 3; Declaration in support of motion to amend at 2.
[2]  Affidavit at 2.
[3]  Complaint at 3; Affidavit at 2-3.
[4]  Complaint at 3; Affidavit at 3.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 2 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 2 of 32

On November 17, 2005, the Kaltag TFYS worker signed a report of adoption, which, along with the adoption decree, was sent to the Bureau of Vital Statistics ("the Bureau").[5]  By letter dated January 26, 2006, the Adoptions Clerk from the Bureau sent a letter back to Kaltag, stating that the documents "were not in order for processing at this time."[6]  The letter explained that:

> As of October 25, 2005, the Bureau will only be accepting Tribal Court granted adoption paperwork from the following 3 entities:  Barrow, Chevak, and Metlakatla.  All other tribal entities will need to submit the cultural Adoption packet in order for the Bureau to process the adoption.[7]

The letter also stated that a Cultural Adoption packet was enclosed with the letter, and explained that once it was completed and returned, along with some other missing information, the Bureau would continue processing the request.[8]  The Bureau never received a completed Cultural Adoption packet from Kaltag regarding N.S.[9]

On September 8, 2006, the plaintiffs brought this action.  The complaint alleges that adoption order issued by the Kaltag court is entitled to full faith and credit under Subsection 1911(d) of the Act[10] and that the Bureau of Vital Statistics violated the subsection by not granting the request for an amended birth certificate.[11]  Plaintiffs pray for a declaration that Kaltag court's adoption orders are entitled to full faith and credit and an injunction requiring the Bureau to grant said status to the adoption order by issuing the Sams a substitute birth certificate.[12]

---

[5]      Affidavit at 3.
[6]      Affidavit at 3.
[7]      Complaint at 4; Affidavit at 3.
[8]      Affidavit at 4.
[9]      Affidavit at 4.
[10]     Complaint at 4.
[11]     Complaint at 4-5.
[12]     Complaint at 5.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 3 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                              Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 3 of 32

# Argument

## I.    *Ex Parte Young* does not permit a suit against Alaska DHSS officials due to the impact on the state's sovereign authority.

The Defendants, all employees of the State of Alaska, Department of Health and Social Services, move the court to dismiss Plaintiffs' claims against them because those claims are in essence a lawsuit against the State of Alaska, and the state is immune from suit regarding claims for which it has not consented to be sued.

Alaska and the other states enjoy inherent sovereign immunity from lawsuits brought in federal court. The Eleventh Amendment of the United States Constitution provides states immunity from suits brought in federal court.[13] This immunity protects states from being sued in federal court by both individuals and other sovereigns, including tribes.[14]

Eleventh Amendment immunity protects Alaska and its officials from suits except for "certain suits seeking declaratory and injunctive relief against state officers in their individual capacities."[15] This limitation of sovereign immunity is known as the *Ex parte Young* doctrine.[16] This exception, however, is not automatic. "[J]ust because a private citizen's federal suit seeks declaratory injunctive relief against State officials does not mean that it must automatically be allowed to proceed under an exception to the Eleventh Amendment protection."[17] "Such 'empty formalism' would improperly sacrifice the 'real interests served by the Eleventh Amendment.'"[18]

---

[13]    *Id.*

[14]    *Blatchford v. Native Village of Noatak*, 501 U.S. 775, 779-782 (1991)

[15]    *Coeur d'Alene Tribe of Idaho*, 521 U.S. at 269 ("The Tribe's suit, accordingly, is barred by Idaho's Eleventh Amendment immunity unless it falls within the exception this Court has recognized for certain suits seeking declaratory and injunctive relief against state officers in their individual capacities. *See Ex parte Young,* 209 U.S. 123, 28 S. Ct. 441, 52 L. Ed. 714 (1908).")

[16]    *Edelman v. Jordan*, 415 U.S. 651 (1974).

[17]    *Bell Atl. Md., Inc. v. MCI Worldcom, Inc.,* 240 F.3d 279, 294 (4th Cir.2001).

[18]    *Id.*, quoting *Coeur d'Alene Tribe*, 521 U.S. at 270.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 4 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                              Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 4 of 32

The *Ex parte Young* exception to state sovereign immunity has been applied in general to two classes of cases: "(1) where no state forum is available to vindicate the federal claim or (2) the federal interest in interpreting or vindicating federal law outweighs the state's sovereignty interests."[19]  When a state forum is available to litigate the federal claim or where special state sovereignty interests outweigh the federal interest in interpreting federal law, federal courts may decline to apply the *Ex parte Young* exception to state sovereign immunity.  Whether to apply the doctrine depends on the "degree to which a State's sovereign interest would be adversely affected by a federal suit seeking injunctive relief against State officials . . .."[20]  When "granting the relief sought would be so much a divestiture of the state's sovereignty as to render the suit as on against the state itself," the doctrine should not apply. [21]

In this case, although Kaltag seeks declaratory and injunctive relief against state officials, this Court should decline to apply the *Ex parte Young* doctrine and accordingly dismiss the case.  First, there is nothing to prevent Kaltag from pursuing its case in state court.  Second, any federal interest in interpreting ICWA is outweighed by the state's sovereignty interests implicated by this case.

In its complaint, Kaltag seeks a declaration that it has the inherent authority to adjudicate tribal adoptions and that its adoption decrees are entitled to full faith and credit under Section 1911(d) of the Act.[22]  Kaltag also seeks an injunction to force the state to give full faith and credit to Kaltag adoption decrees by having the Bureau issue substitute birth certificates in the same manner it issues substitute birth certificates following a state court adoption.[23]

---

[19]     *Carten v. Kent State University,*282 F.3d 391 (6th Cir. 2002), citing *Coeur d'Alene*, 521 U.S. at 271-77.

[20]     *Bragg v. West Virginia Coal Ass'n,* 248 F.3d 275, 293 (4th Cir. 2001).

[21]     *Duke Energy Trading & Marketing, L.L.C. v. Davis*, 267 F.3d 1042, 1053 (9th Cir. 2001), cert. denied 535 U.S. 1112 (2002)

[22]     Complaint at 5.

[23]     *Id.*

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                                 PAGE 5 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                                Case No. 3:06-CV 00211 (TMB)

Case 3:06-cv-00211-TMB    Document 32    Filed 05/15/07    Page 5 of 32

Granting the requested relief would eliminate the state's exclusive jurisdiction, as set out in Section 1911 of the Act, to initiate child protection proceedings concerning Indian children of tribes, such as Kaltag, that are not on reservations or have not applied for exclusive jurisdiction. If, as the Plaintiffs claim, the state has to give full faith and credit to Kaltag's adoption orders arising from child protection proceedings that were initiated by Kaltag and not transferred from a state court proceeding, it would completely strip the state and its courts of its sovereign right to adjudicate matters concerning the birth family of the adopted child, since the state has no ability to intervene or transfer the action back to state court.

Here the state's interest is in protecting its sovereignty and its ability to promote the welfare of all its children. The United States Supreme Court recognized in *Santosky v. Kramer*[24] that states have a *parens patriae* interest in preserving and promoting the welfare of children.[25] In child protection proceedings this interest of the state should be considered urgent.[26]

A review of case law on this subject supports the conclusion that the *Ex parte Young* doctrine is not applicable to this case. In *Coeur D'Alene*, the U.S. Supreme Court held that the Coeur d'Alene Tribe could not invoke the *Ex parte Young* doctrine in an action seeking to divest the State of all regulatory authority over certain submerged lands located within Idaho. A majority of the Court explained that "the Tribe's suit is the functional equivalent of a quiet title action [against a State] which implicates special sovereignty interests."[27] The Court emphasized the "far-reaching and invasive relief" sought by the Tribe:

> The requested injunctive relief would bar the State's principal officers from exercising their governmental powers and authority over the disputed lands and

---

[24]     102 S. Ct. 1388 (1982).
[25]     *Id.* at 1401.
[26]     *Id.*
[27]     Id. at 281.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT     PAGE 6 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*     Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB    Document 32    Filed 05/15/07    Page 6 of 32

waters. The suit would diminish, even extinguish, the State's control over a vast reach of lands and waters long deemed by the State to be an integral part of its territory. To pass this off as a judgment causing little or no offense to Idaho's sovereign authority and its standing in the Union would be to ignore the realities of the relief the Tribe demands. [28]

Similar to the facts of *Coeur D'Alene,* the relief sought by Kaltag would be "far-reaching and invasive" and would implicate the state's special sovereignty interests. To paraphrase the above quotation,

> The requested injunctive relief would bar the State's [Office of Children's Services] from exercising their governmental powers and authority over [off-reservation Indian children]. The suit would diminish, even extinguish, the State's [ability to initiate cases concerning the birth family of the adopted child,] long deemed by the State to be an integral part of its [executive and judicial functions]. To pass this off as a judgment causing little or no offense to [Alaska]'s sovereign authority and its standing in the Union would be to ignore the realities of the relief the Tribe demands.

This case can also be compared to law suits that have proceeded under the *Ex parte Young* doctrine because the special state sovereignty interests do not outweigh the federal interest in proceeding in federal court. In *Duke Energy*, the suit was not barred by the Eleventh Amendment because the lawsuit sought to prohibit the governor's exercise of his emergency powers in a very limited context. "If Duke were requesting relief that would permanently divest the Governor of his future ability to invoke his emergency powers or remove an entire area over which he could previously use his powers, such as California's intrastate electricity supply, then the narrow holding of Coeur d'Alene might well apply."[29] In this case, by contrast, Kaltag is requesting relief that would permanently divest the state of its ability to have exclusive jurisdiction to initiate child protection matters with respect to Kaltag Indian children, which would become precedent against the state's ability to have exclusive jurisdiction to initiate child protection matters with respect to most other Alaskan Indian children.

---

[28]     *Id.* at 282.
[29]     *Duke Energy*, 267 F.3d 1053.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT     PAGE 7 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*     Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB    Document 32    Filed 05/15/07    Page 7 of 32

State officials sued in their official capacity, as is the case here, are "the State" for sovereign immunity purposes unless the plaintiffs satisfy the requirements of *Ex parte Young*. The plaintiffs in this case cannot meet this burden because Plaintiffs' requested relief impacts special sovereignty interests to the extent that the suit is, in reality, against the State and not a State official. Accordingly, since all the claims in the case are against State officials, the suit must be dismissed.

## II. Kaltag does not have the inherent right to adjudicate tribal adoptions originating from non-transfer child protection proceedings.

If the Court decides not to dismiss this case on Eleventh Amendment grounds, the Defendants move the court in the alternative to dismiss the case because Native Village of Kaltag, a reservation-less tribe that has not been granted exclusive jurisdiction by the federal government, does not have jurisdiction to initiate child protection proceedings. Without such jurisdiction, the full faith and credit clause in Subsection 1911(d) of the Act does not apply, and therefore the Defendants cannot be enjoined to provide the Plaintiffs with an amended birth certificate pursuant to Subsection 1911(d).

### A. The Full Faith and Credit Clause of Subsection 1911(d) is not applicable in this case because Kaltag lacks jurisdiction to initiate child protection cases.

The complaint alleges that the Kaltag adoption order is entitled to full faith and credit under Subsection 1911(d) of the Act and that the Bureau violated the subsection by not granting Kaltag's request for an amended birth certificate.[30] Subsection 1911(d) requires states to:

> …give full faith and credit to the public acts, records, and judicial proceedings of any Indian tribe applicable to Indian child custody proceedings to the same extent that such entities give full faith and credit to the public acts, records, and judicial proceedings of any other entity.

---

[30]     Complaint at 4-5.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 8 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*          Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 8 of 32

Kaltag's assertion that ICWA's full faith and credit requirement directs the state to recognize its adoption order presumes that it has jurisdiction in the first place. Since Alaska is not required to give full faith and credit to a judicial determination made by a court without jurisdiction,[31] the first issue to be addressed is whether Kaltag has jurisdiction to issue adoption orders in cases that originated in tribal court.

Tribal jurisdiction under the Indian Child Welfare Act depends upon membership of the child,[32] the child's domicile,[33] and whether the proceeding at issue is a "child custody proceeding" as defined in the Act.[34] Tribes have exclusive jurisdiction over child custody proceedings involving member children domiciled within their Indian country. Tribes have only *transfer* jurisdiction for cases concerning member children domiciled outside of Indian country. This congressionally-approved approach prevents tribes without Indian country from exercising initial jurisdiction over child protection

---

[31]    *Wall v. Stinson*, 983 P.2d 736, 737 (Alaska 1999) ("We grant full faith and credit to another state's judgment *only* if the issuing court had jurisdiction over the parties and the subject matter in controversy.") (emphasis added).

[32]    ICWA, 25 U.S.C. § 1903 (4) states: "Indian child" means any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe.

[33]    ICWA, 25 U.S.C. § 1911(a) states: An Indian tribe shall have jurisdiction exclusive as to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such tribe, except where such jurisdiction is otherwise vested in the State by existing Federal law. Where an Indian child is a ward of a tribal court, the Indian tribe shall retain exclusive jurisdiction, notwithstanding the residence or domicile of the child.

[34]    ICWA, 25 U.S.C. § 1903(1) states:
(1) "child custody proceedings" shall mean and include --
        (i) "foster care placement" which shall mean any action removing an Indian child from its parent or Indian custodian for temporary placement in a foster home or institution or the home of a guardian or conservator where the parent or Indian custodian cannot have the child returned upon demand, but where parental rights have not been terminated;
        (ii) "termination of parental rights" which shall mean any action resulting in the termination of the parent-child relationship;
        (iii) "preadoptive placement" which shall mean the permanent placement of an Indian child in a foster home or institution after the termination of parental rights, but prior to or in lieu of adoptive placement; and
        (iv) "adoptive placement" which shall mean the permanent placement of an Indian child for adoption, including any action resulting in a final decree of adoption.
        Such term or terms shall not include a placement based upon an act which, if committed by an adult, would be deemed a crime or upon an award, in a divorce proceeding, of custody to one of the parents.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT        PAGE 9 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*        Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 9 of 32

matters unless the tribe successfully petitions to assume such jurisdiction under Section 1918 of the Act.

Section 1911 of the Act allocates jurisdiction over child protection cases between the state and tribes[35] in the absence of an approved petition for reassumption of jurisdiction under Section 1918.[36]

Under Subsection 1911(a), tribes have exclusive jurisdiction over child protection cases that arise on their reservations. The jurisdictional rights of tribes that lack reservations, including Native Village of Kaltag, are prescribed by Subsection 1911(b).[37] That subsection gives the state sole jurisdiction to initiate child protection matters outside of Indian country but provides a mechanism for transfer of such cases to willing tribal courts.

In *Matter of Appeal Pima County Juvenile Action* an Arizona appellate court recognized that "[i]n its allocation of jurisdiction in custody proceedings [Subsection 1911(a)] defers to the inherent sovereignty of the tribe over matters affecting [their] internal welfare."[38] On the other hand, Subsection 1911(b) "provides mechanisms

---

[35] *Mississippi Band of Choctaw Indians v. Holyfield*, 490 U.S. 30 at 56 n.2 (1989) ("[The Act] clarifies the allocation of jurisdiction over Indian child custody proceedings between Indian tribes and the States" (quoting House Report, at 8, U.S. Code Cong. & Admin. News 1978, at 7530 (footnote omitted)). *See also* 124 Cong. Rec. 38102 (1978) (remarks of Rep. Udall)); *In The Matter Of the Appeal In Pima County Juvenile Action,* 635 P.2d 187, 189 (Ariz. App. 1981).

[36] Section 1918 provides a mechanism for tribes to petition to reassume jurisdiction over child protection proceedings. Before any tribe may do so, it must present a petition to the Secretary of the Interior for approval, and that petition must demonstrate that the tribe has a suitable plan to exercise such jurisdiction. The secretary may consider whether the tribe maintains a membership role for clearly identifying the persons who will be affected by the reassumption of jurisdiction, the size of the reservation or former reservation, the population base of the tribe, and the feasibility of the plan in cases of multitribal occupation of a single reservation or geographic area. 25 U.S.C. § 1918.

[37] Subsection 1911(b) reads: "In any State court proceeding for the foster care placement of, or termination of parental rights to, an Indian child not domiciled or residing within the reservation of the Indian child's tribe, the court, in the absence of good cause to the contrary, shall transfer such proceeding to the jurisdiction of the tribe, absent objection by either parent, upon the petition of either parent or the Indian custodian or the Indian child's tribe; *Provided,* that such transfer shall be subject to declination by the tribal court of such tribe."

[38] *Pima County*, 635 P.2d at 188. *Note,* in this paragraph [1911(a)] replaces the word "Act" to clarify the meaning of the quote. The court followed the quote with "25 U.S.C.A. §1911(a)" to inform the reader that Section 1911(a) is the part of the Act that allocates jurisdiction.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 10 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                        Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 10 of 32

whereby the tribe can exert its jurisdiction or influence beyond reservation boundaries in child custody actions involving off-reservation tribal members."[39]  According to *Pima County*, Subsection 1911(b) "modifies the general rule that Indians off the reservation are subject to state jurisdiction by requiring state courts to transfer to the tribe most child custody proceedings upon petition by the Indian child's parent, Indian custodian, or tribe."[40]

Since they lack Indian country, most Alaska Native villages, including Kaltag, cannot exercise Subsection 1911(a) jurisdiction over a child protection case because that subsection only applies to cases where the parties reside on a reservation.[41] Therefore, unless such tribes have petitioned for jurisdiction under Section 1918 of the Act, which Kaltag has not, such tribes can only obtain jurisdiction through state court transfers of cases pursuant to Subsection 1911(b).

In *Mississippi Band of Choctaw Indians v. Holyfield*,[42] the only Indian Child Welfare Act case decided by the U.S. Supreme Court, the Court confirmed that Section 1911 allocates jurisdiction between the states and tribes in the matter described above:

> Section 1911 lays out a dual jurisdictional scheme.  Section 1911(a) establishes exclusive jurisdiction in the tribal courts for proceedings concerning an Indian child "who resides or is domiciled within the reservation of such tribe," as well as for wards of tribal courts regardless of domicile.  Section 1911(b), on the other hand, creates concurrent but presumptively tribal jurisdiction in the case of children not domiciled on the reservation:  on petition of either parent or the tribe, state-court proceedings for foster care placement or termination of parental rights are to be transferred to the tribal court, except in cases of "good cause," objection by either parent, or declination of jurisdiction by the tribal court. [43]

---

[39]     *Id.*

[40]     *Id.*

[41]     Subsection 1911(a) ("An Indian tribe shall have jurisdiction exclusive to any State over any child custody proceeding involving an Indian child who resides or is domiciled within the reservation of such a tribe. . .").

[42]     490 U.S. 30 (1989).

[43]     *Id.* at 36.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 11 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                         Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 11 of 32

The phrase "concurrent . . . jurisdiction" quoted above in reference to Section 1911(b) does not mean that Alaska Native villages have "concurrent authority" to initiate child protection cases. Such an interpretation would rob the state of its traditional role in protecting all Alaska children, would shut the state court doors to parents of Alaska Native children regardless of whether they consented to use tribal courts, and would defeat the congressional allocation of jurisdiction set out in Section 1911 of the Act. Instead, this transfer jurisdiction is a concurrent jurisdiction *conditioned* upon parental consent and the absence of good cause to deny transfer.

Subsection 1911(b) gives Indian families residing off reservation an avenue for having their cases adjudicated by a willing tribal court. Absent good cause or the objection of a parent, Subsection 1911(b) requires state courts to transfer child protection cases to tribal courts. However, as recognized by the court in *Matter of Maricopa County Juvenile Action*,[44] the Act "does not deprive a state of its traditional jurisdiction over an Indian child within its venue; it establishes 'minimum federal standards and procedural safeguards designed to protect the rights of the child as an Indian and the integrity of the Indian family.'"[45] If reservation-less tribes had jurisdiction to initiate child protection cases, it would also cut off the state's ability to protect its strong interest in child welfare by robbing it of the opportunity to review petitions for transfer under Subsection 1911(b)'s good cause exception to transfer.

In addition, if Congress had wanted to give Alaska Native villages "concurrent authority" to initiate child protection cases, it would not have drafted Subsection 1911(b) to give parents an absolute veto over any transfers from state to tribal court. This parental veto right would be defeated if the Court ruled for the plaintiffs in this case because the veto may only be exercised in state court to block transfer of a case

---

[44]    828 P.2d 1245 (Ariz. App. 1991).
[45]    *Id.* at 1248 quoting Manuel P. Guerrero, *Indian Child Welfare Act of 1978: A Response to the Threat to Indian Culture Caused by Foster and Adoptive Placements of Indian Children*, 7 Am. Indian L. Rev. 51, 75 (1979).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 12 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 12 of 32

to tribal court. Without this veto right, parents would be locked out of state courts any time a tribe to which their child was eligible for membership initiated a child protection action against them.

In other words, whatever jurisdiction a reservation-less tribe may claim under Subsection 1911(b) is subject to defeasance by parents when they veto transfer of the case to them and defeasance by the state court if it finds good cause not to transfer the case to the tribe. Therefore, Subsection 1911(b) jurisdiction is inchoate or undeveloped until the state court actually transfers the case. Once it does, the receiving tribal court has exclusive jurisdiction to continue the case.[46]

In the case involving N.S., the initial removal of N.S. from her biological family and placement in the custody of the Kaltag court did not occur in state court; instead, it occurred in the Kaltag tribal court. Because there was no state court involvement, there was no motion to transfer the case to the Kaltag court. Without a transfer motion under subsection 1911(b), there was no opportunity for the parents, one of whom was not even a Kaltag tribal member, to prevent the case from being heard in the Kaltag court. Nor was there an opportunity for the state to prevent the case from being heard in the Kaltag court through the good cause exception in Subsection 1911(b).

If the case had been originally brought in state court and was then transferred to the Kaltag court, the latter would have had jurisdiction expressly recognized under the Act. Because Kaltag would have had jurisdiction to issue the adoption order in that case, the state would have been required to give full faith and credit to such an order. Under Subsection 1911(d), tribal court adoption decrees arising out of a proceeding transferred pursuant to Subsection 1911(b) are entitled to the same full faith and credit as the State of Alaska would provide to adoption decrees from a court of

---

[46]     This exclusive jurisdiction lasts throughout the pendency of the case. Once the case is dismissed in tribal court, the state can initiate a new proceeding, if there are grounds to do so.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 13 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                              Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 13 of 32

competent jurisdiction in another state.[47] AS 18.50.220(a)(1)[48] sets out the procedure for issuing birth certificates from a court of competent jurisdiction in another state, and therefore this is the procedure to be followed for tribal court adoption decrees arising out of a proceeding transferred pursuant to Subsection 1911(b).

Even without having jurisdiction pursuant Subsection 1911(b), the Plaintiffs still would have been able to obtain an amended birth certificate from the Bureau. Since April 1990, the state has been issuing amended birth certificates "when the adoption of an Indian individual has occurred under tribal custom."[49] This regulation gives a mechanism for the state to recognize cultural adoptions under the doctrine of equitable or virtual adoption first recognized by the Alaska Supreme Court in *Calista v. Mann*.[50]

**B.    Alaska case law since *Venetie* supports the state's position that only the state can initiate child protection cases.**

There have been a series of decisions over the last few decades that have addressed the issues in this case. In *Native Village of Nenana v. State of Alaska, Department of Health and Social Services*,[51] the Alaska Supreme Court considered the Indian Child Welfare Act in light of Public Law 280 and determined that Public Law 280 effectively divested tribal jurisdiction and granted state courts exclusive jurisdiction over

---

[47]    This proposition was recently the settlement order of a case in which the state mistakenly failed to give full faith and credit to an order arising out of a transfer case: "The Court DECLARES that when a tribal court, as defined under 25 U.S.C. § 1903(12), issues an adoption decree following a state transfer of a CINA proceeding from that court under Subsection 1911(b), the decree is entitled to full faith and credit under Subsection 1911(d)." Order Based on Stipulation of Parties, *Regional Court v. Mitchell*, Case No. 3:06-cv-00245.

[48]    AS 18.50.220(a)(1) provides: "The state registrar shall establish a new certificate of birth for a person born in the state, upon proper request that the certificate be made, and upon receipt of an adoption report as provided in AS 18.50.210 , or a certified copy of the decree of adoption from a court of competent jurisdiction in another state, together with the information necessary to identify the original certificate of birth and to establish the new certificate of birth; however, a new certificate of birth may not be established if so requested by the court decreeing the adoption, the adoptive parents, or the adopted person if the adopted person is of legal age."

[49]    7 AAC 05.500(b), am 4/5/90, Register 114.

[50]    564 P.2d 53 (Alaska 1977).

[51]    722 P.2d 219 (Alaska 1986), cert. denied, 479 U.S. 1008 (1986).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 14 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                         Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 14 of 32

matters involving Indian children.[52]  After *Nenana*, the Ninth Circuit Court of Appeals, in *Native Village of Venetie IRA Council v. Alaska,*[53] held that Alaska Native villages and the state have concurrent jurisdiction over child protection cases involving members' children.[54]  In *In re F.P.*,[55] the Alaska Supreme Court rejected the holding in *Native Village of Venetie* and confirmed its earlier holding in *Nenana*.[56]

Almost ten years after the *In re F.P.* decision, the Alaska Supreme Court in *C.R.H.* was asked to find that Alaska Native villages have concurrent jurisdiction with the state to consider child protection matters.  Instead, the court chose to resolve the case on other grounds.[57]

In *Nenana*, the court denied a tribe's Subsection 1911(b) petition for transfer of jurisdiction because the tribe had not reassumed jurisdiction under Section 1918.[58]  In *C.R.H.* the court concluded that Subsection 1911(b) authorizes transfer of jurisdiction to tribal courts regardless of Public Law 280.[59]  The court also held that "[t]o the extent that *Nenana, F.P.* and *K.E.* are inconsistent with this conclusion, those cases are overruled."[60]  After *C.R.H.,* therefore, Alaska Native Villages could exercise jurisdiction over a child protection case following transfer of jurisdiction ordered by a state superior court under Subsection 1911(b).[61]

*C.R.H.* reversed only that portion of the *Nenana* line of cases that held an Alaska Native village had to reassume jurisdiction under Section 1918 of the Act before a superior court could transfer a case to it under Subsection 1911(b).  In *C.R.H.*, the court

---

[52]     *Nenana*, 722 P.2d at 221.
[53]     944 F.2d 548 (9th Cir. 1991).
[54]     *Venetie*, 944 F.2d at 559.
[55]     843 P.2d 1214 (Alaska 1992), cert. denied, 508 U.S. 950 (1993).
[56]     *In re F.P.*, 843 P.2d at 1216.
[57]     *C.R.H.*, 29 P.3d at 852 ("Nikolai urges us to reconsider *Nenana's* interpretation of Public Law 280, and to hold that the Alaska Native tribes affected by Public Law 280 retain jurisdiction concurrent with that of the state.  We need not reach this issue, however. . . .").
[58]     *Nenana*, 722 P.2d 219 at 220.
[59]     *C.R.H.*, 29 P.3d at 854.
[60]     *Id.*
[61]     2004 Op. Att'y Gen. No. 1, at 2 (October 1).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 15 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                                              Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 15 of 32

explained that *Nenana* was based primarily on Section 1918, while *C.R.H.* turns on an interpretation of Section 1911.[62]  Therefore, *Nenana* is still good law in Alaska with respect to its holding that state courts have exclusive jurisdiction over matters involving Indian children.  Although this Court is not bound to follow the holding in *C.R.H.*, as set out in this brief, there are sound reasons for so doing.

> **C.   Legislative history of the Act provides strong evidence of Congress' intent to limit tribes' authority under Subsection 1911(b) to a transfer-only form of concurrent jurisdiction.**

In the House Report relied upon by the Supreme Court in *Holyfield* to divine Congressional intentions in passing the Indian Child Welfare Act[63] (House Report), the author stated that the Act was not designed "to oust the States of their traditional jurisdiction over Indian children falling within their geographic limits."[64]  A review of the Act's legislative history (gathered by Justice Stevens in his *Holyfield* dissent) demonstrates that Congress was fully aware of the jurisdictional lines drawn by courts before the Indian Child Welfare Act and approved of the manner in which those cases had allocated jurisdiction between state and tribal courts.[65]  The report cites with approval a series of case decisions allocating jurisdiction in children's cases.  The holdings of these cases establish that, at the time the Act became law, only states had authority to initiate child protection cases arising outside of reservations.  Therefore, the Act cannot be read as ousting the states from their traditional role by allowing tribes an equal right to initiate off-reservation child protection cases.

In summarizing the cases cited in the House Report, Justice Stevens recognized that while the Act made substantive changes in the way state court child

---

[62]     *C.R.H.*, 29 P.3d at 852, n.13.

[63]     House Report (Interior and Insular Affairs Committee) No. 95-1386, July 24, 1978 (To Accompany H.R. 12533) cited by *Holyfield*, 490 U.S. at 33-37.

[64]     House Report at 19, U.S.Code Cong. & Admin.News 1978, at 7541.

[65]     Since Justice Stevens drafted the dissent rather than the majority opinion, the state is asking the Court to primarily rely upon the Justice's credibility as a reporter of the legislative history rather than his legal pronouncements.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                PAGE 16 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                                    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 16 of 32

protection cases would be handled in the future, "its jurisdictional provision [Section 1911] is designed primarily to preserve tribal sovereignty over the domestic relations of tribe members and to confirm a developing line of cases which held that the [reservation] tribe's exclusive jurisdiction could not be defeated by the temporary presence of an Indian child off the reservation."[66]  On the other hand, he acknowledged the House Report statement that Congress did not intend to oust the states of their traditional jurisdiction over Indian children living off the reservation.[67]  Exploring this concept, Justice Stevens discusses the lower court cases mentioned in the House Report that addressed how jurisdiction should be allocated between the states and tribes in child protection cases concerning Indian children.[68]  Most of the cases involved situations where the child was domiciled on a reservation, so the courts allocated jurisdiction to the tribe.[69]  One, *In Re Greybull*,[70] allocated jurisdiction to the state because the child resided off-reservation.  *Greybull* held that Indian children that are not domiciled on a reservation are subject to the state's child protection laws, including provisions like those set out in AS 47.10, that give Alaska's courts sole jurisdiction over child protection proceedings.

In *Greybull*, a mother of Indian children who had never lived on a reservation argued that her tribe had exclusive jurisdiction in child protection matters. Citing the U.S. Supreme Court decision in *Mescalero Apache Tribe v. Jones*,[71] and Cohen's Handbook of Federal Indian Law, the *Greybull* court found that "[t]he general

---

[66]  *Holyfield*, 490 U.S. 30 at 58.

[67]  *Id.*

[68]  *Id.* ("Congress specifically approved a series of cases in which the state courts declined jurisdiction over Indian children who were wards of the tribal court, *In re Adoption of Buehl,* 87 Wash.2d 649, 555 P.2d 1334 (1976);  *Wakefield v. Little Light,* 276 Md. 333, 347 A.2d 228 (1975), or whose parents were temporarily residing off the reservation; *Wisconsin Potowatomies of Hannahville Indian Community v. Houston,* 393 F. Supp. 719 (WD Mich.1973), but exercised jurisdiction over Indian children who had never lived on a reservation and whose Indian parents were not then residing on a reservation, *In re Greybull,* 23 Or. App. 674, 543 P.2d 1079 (1975); see House Report, at 21, U.S. Code Cong. & Admin. News 1978, at 7543.")

[69]  *Holyfield,* 490 U.S. at 57-62.

[70]  543 P.2d 1079 (Ore. 1975).

[71]  411 U.S. 145, 148 - 49 (1973).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 17 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 17 of 32

rule is that Indians domiciled off their reservation are subject to state laws."[72]  This

includes the state's child protection statute that gives state courts exclusive jurisdiction

over child protection cases.  Therefore the state court, not the tribal court, had jurisdiction

over the Greybull case.[73]

Greybull provides an important insight as to how Congress intended

Section 1911 to allocate jurisdiction in Alaska where most of the Alaska Native villages

lack reservations.  Congress specifically approved of the jurisdictional approach taken by

the court in Greybull.[74]  Congress saw Greybull as a case describing a state's traditional

jurisdiction over child protection cases involving non-reservation Native Americans.

Since Subsection 1911(b) allocates jurisdiction in non-reservation cases and Congress did

not intend to oust states of their traditional jurisdiction over child protection cases,[75] as

demonstrated by Greybull, this Court must find that Congress intended the State of

Alaska to have Greybull-type jurisdiction over child protection cases for all the plaintiff

villages.

The House Report also cited with approval Wisconsin Potowatomies v.

Houston.[76]  In that case the court confirmed that a reservation tribe retained jurisdiction

over a child protection case even though the child's parents had temporarily moved off

the reservation.  However, relying on the holding in Standing Bear v. Crook,[77] the court

stated that "it is well established that [Indian] rights to mobility and to live outside the

reservation temporarily or permanently cannot be impeded by the action of the tribe."[78]

Therefore, the court said, had the child's parents been legally domiciled in a community

outside of the reservation, "it is the opinion of the court that the tribe, if it was entitled to

---

[72]     Greybull, 543 P.2d at 1080-81.
[73]     Id. at 1081.
[74]     Holyfield, 490 U.S. at 59.
[75]     House Report at 7541.
[76]     393 F. Supp 719 (D.C. Mich. 1973) cited in the House Report at 7544.
[77]     25 Fed (as No. 14891 (1899)).
[78]     Potowatomies, 393 F. Supp at 731.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 18 OF 32
KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.                                    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 18 of 32

custody of the children at all, would have been obligated to submit itself to the jurisdiction of the [state] probate court which had lawfully taken custody of the children…."[79]

Because *Potowatomies* was cited with approval by Congress, a tribe in such a situation today would have to petition the state probate court under Subsection 1911(b) to transfer the case to its tribal court. In support of its conclusion the *Potowatomies* court cited *Mescalero Apache Tribe v. Jones,*[80] a pre-Indian Child Welfare Act case where the U.S. Supreme Court stated that, "[a]bsent express federal law to the contrary, Indians going beyond reservation boundaries have generally been held subject to non-discriminatory state law otherwise applicable to all citizens of the State."[81] Although it was not mentioned in the House Report, the Secretary of the Interior reached a similar conclusion in a formal opinion. In *Jurisdiction of Tribal Court and Colorado Juvenile Court for Determination of Custody of Dependent and Neglected Indian Child*, the secretary opined that a tribal custody decree was ineffective because, in part, "the jurisdiction of Indian tribes ceases at the border of a reservation."[82]

*Mescalero Apache*, in turn, drew on precedent developed in *Organized Village of Kake v. Egan,*[83] where the U.S. Supreme Court ruled that the Southeast Alaska villages of Kake and Angoon had to comply with a state ban on the use of fish traps because neither village had a reservation.[84] In a companion case, the Court found that the state ban did not prevent members of the Metlakatla Indian Community from operating fish traps because the community had a reservation.[85] *Mescalero, Kake,* and *Egan*, all of

---

[79]   *Id.*
[80]   411 U.S. 145 (1973).
[81]   *Id* at 148-149.
[82]   62 Interior Dec. 466, 468 (1955).
[83]   369 U.S. 60 (1962).
[84]   *Id.* at 62 ("The situation differs here from that of the Metlakatlans in that neither Kake nor Angoon has been provided with a reservation and there is no statutory authority under which the Secretary of the Interior might permit either to operate fish traps contrary to state law.")
[85]   *Metlakatla Indian Community v. Egan*, 369 U.S. 45 (1962).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 19 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 19 of 32

which were decided before passage of the Indian Child Welfare Act, confirm that with the exception of Metlakatlans, Alaska Native Village members are generally subject to the state's laws because their villages lack reservations or Indian country.

In fact, citing the *Potowatomies* decision and other authority, the Alaska Supreme Court in *Nenana* noted that "*prior* to the Child Welfare Act, Indian tribes may not have had jurisdiction over custody proceedings in a section 1911(b) situation, *i.e.,* where the child was domiciled off the reservation…. The referral jurisdiction provision may actually grant Indian tribes greater authority than they had prior to the Act."[86]

The cases cited by Congress in the House Report, the express congressional intent *not* to oust the traditional jurisdiction of the state courts under the Act, and the observations of the Alaska Supreme Court in *Nenana* indicate that, before the Indian Child Welfare Act was enacted, tribes did not have authority to initiate child protection proceedings concerning their member children domiciled off reservation. The Act retained the jurisdiction of states to initiate child protection proceedings involving tribal children, but granted greater protection to tribes requiring transfer of state cases to tribes under certain circumstances. However, Congress did not grant tribes authority to *initiate* cases outside of their reservations.

**D.      Alaska Native villages do not have inherent authority to initiate child protection cases.**

The Plaintiffs ask this Court to rule that "Plaintiff Kaltag Tribal Council, as a federally recognized Tribe, possess inherent right of self-governance which includes the authority to adjudicate tribal adoptions . . .."[87]  The Court should reject this request because they do not have inherent authority to initiate child protection proceedings.

---

[86]      *Nenana*, 722 P.2d at 221 (emphasis in original).
[87]      Complaint at 5.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 20 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*          Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 20 of 32

## 1. Inherent Tribal Authority Extends only to Purely Intramural Tribal Matters.

While tribes are sovereign entities and retain some attributes of inherent sovereignty over their Indian country and their tribal members,[88] they are domestic dependent sovereigns of the United States subject to the plenary authority of Congress under the Indian Commerce Clause.[89] Congress, acting under this plenary authority, may define, limit or extinguish a tribe's inherent sovereignty.[90]

Tribes are not states.[91] Their courts are not courts of general jurisdiction.[92] As dependent sovereigns, tribes retain only that inherent authority that is consistent with their dependent status.[93]

In *Montana v. U.S.*[94], the Supreme Court explained that tribes' inherent sovereignty has been implicitly divested where "*the relations between an Indian tribe and nonmembers of the tribe*" are concerned, the implicit divestiture "rest[ing] on the fact that the dependent status of Indian tribes within [the] territorial jurisdiction [of the United States] is necessarily inconsistent with their freedom *to determine their external relations*." Therefore, the inherent powers of tribal self-government that remain today

---

[88]     *United State v. Mazurie*, 419 U.S. 544, 557 (1975) ("Indian tribes are unique aggregations possessing attributes of sovereignty over both their members and their territory") (citing *Worcester v. Georgia*, 6 Pet. 515, 557; 8 L. Ed. 483 (1832)).

[89]     "[T]he central function of the Indian Commerce Clause is to provide Congress with plenary power to legislate in the field of Indian affairs." *Cotton Petroleum Corp. v. New Mexico*, 490 U.S. 163, 192 (1989).

[90]     *United States  v. Wheeler*, 435 U.S. 313, 323 (1978) ("The powers of Indian tribes are . . . inherent powers of a limited sovereignty which has never been extinguished. . . . The sovereignty that the Indian tribes retain is of a unique and limited character.  It exists only at the sufferance of Congress and is subject to complete defeasance . . . .  In sum, Indian tribes still possess those aspects of sovereignty not withdrawn by treaty or statute, or by implication as a necessary result of their dependent status.") (citations, inner quotation marks and italics omitted).

[91]     *Blatchford v. Native Village of Noatak,* 501 U.S. 775, 782 (1991) (by entering the convention, the states surrendered their sovereign immunity from suit as against other states, but not as against Indian tribes or foreign sovereigns.)

[92]     *Nevada v. Hicks*, 533 U.S. 353, 367 (2001) ("Respondents' contention that tribal courts are courts of 'general jurisdiction' is also quite wrong.")

[93]     *Id.*

[94]     450 U.S. 544 (1981).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 21 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 21 of 32

"*involve only the relations among members of a tribe.*"[95]  Thus, "case law establishes that, absent express authorization by federal statute or treaty, tribal jurisdiction over the conduct of nonmembers exists only in limited circumstances."[96]

"Where [the interests of] nonmembers are concerned, 'the exercise of tribal power *beyond what is necessary to protect tribal self-government or to control internal relations* is inconsistent with the dependent status of tribes, and so cannot survive without express congressional delegation.'"[97]  The U.S. Supreme Court has "explained that what is necessary to protect tribal self-government and control internal relations" is (1) the authority to punish tribal criminal offenders for crimes committed within a tribe's Indian country, (2) to determine tribal membership, (3) to regulate domestic relations *among members*, and (4) to prescribe rules of inheritance for members.[98]

It is facially attractive to conclude that Alaska's tribes have inherent authority over ICWA child custody proceedings because those proceedings concern "domestic relations."  However, the limited tribal authority over internal tribal matters recognized in *Montana* and explicated in *Hicks* exists only "in purely intramural matters" of the tribe.[99]

---

[95]     The quotations in this sentence are from *Montana v. U.S.*, 450 U.S. at 564 (quoting *U.S. v. Wheeler*, 435 U.S. at 326) (emphasis added by the Court in *Montana*).

[96]     *State v. A-1 Contractors*, 520 U.S. 438, 445 (1997).

[97]     *Nevada v. Hicks*, 533 U.S. at 359 (quoting *Montana v. U.S.*, 450 U.S. 544, 564 (1981)) (emphasis in original).

[98]     "[W]e [have] explained that what is necessary to protect tribal self-government and control internal relations can be understood by looking at the examples of tribal power to which *Montana* [*v. U.S.*] referred:  tribes have authority "[to punish tribal offenders,] to determine tribal membership, to regulate domestic relations among members, and to prescribe rules of inheritance for members."  *Nevada v. Hicks*, 533 U.S. at 360-61 (quoting *Montana v. U.S.*, 520 U.S. at 459) (first three brackets added; fourth bracket in original).

[99]     *United States v. Farris*, 624 F.2d 890, 893 (9th Cir. 1980)(General federal laws apply to tribes unless the statute concerns "exclusive rights of self-governance in purely intramural matters); *Donovan v. Coeur d'Alene Tribal Farm*, 751 F.2d 1113, 1116 (9th Cir. 1985) (same);  *National Labor Relations Board v. Chapa De Indian Health Program, Inc.*, 316 F.3d 995, 999-1000 (9th Cir. 2003) (holding that tribal provision of health care services under an Indian Self-Determination Act compact is not a purely intramural matter, in part because the tribal organization's third party funding comes from state sources and third-party insurers and because the organization served (and employed) non-Indians on non-Indian lands.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 22 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 22 of 32

ICWA child custody proceedings arising within the state -- but outside of Indian country -- are not purely intramural tribal domestic relations matters.  While ICWA child custody proceedings may involve domestic relations issues of tribal members, the state has an undeniably strong interest in such proceedings.  As discussed below, the state has an interest -- indeed a duty -- to protect children residing within its jurisdiction and outside of an Indian reservation.  The state's interest cannot be vindicated in tribal courts because those courts have no jurisdiction over the state.

    **2.**    **Child protection proceedings are not strictly internal tribal matters because they implicate important interests of the state and non-members.**

        **(a)**    **The State's Interest**

States have a *parens patriae* interest in preserving and promoting the welfare of children.[100]  This interest has been called urgent and compelling by courts.[101]  By enacting the Alaska Child in Need of Aid Rules, the Alaska Supreme Court recognized "the state's strong interest in protecting and preserving the well-being of the children of this state."[102]  The Court also recognized that Alaska state courts have a duty to determine the best interests of those same children.[103]  The state has an undeniably strong interest in protecting Alaska Native and other children residing in this state and outside of Indian reservations.

The state's strong interest in the welfare of its children takes ICWA proceedings outside of the ambit of the tribes' inherent sovereignty over purely intramural tribal matters.  For example, in *State, Dep't of Human Services v. Jojola*,[104] the New Mexico Supreme Court held that a state's interest in enforcing its public assistance laws takes child support outside of a reservation tribe's inherent sovereignty to regulate

---

[100]    *Santosky v. Kramer,* 455 U.S. 745, 765 (1982).
[101]    *See* pp. 31-33.
[102]    *In re D.D.S.,* 869 P.2d at163.
[103]    *Id.*
[104]    660 P.2d 593 (N.M. 1983).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT    PAGE 23 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 23 of 32

domestic relations among members of the tribe.[105]  The court concluded that exercise of state jurisdiction did not interfere with the tribe's retained inherent right of self-government -- the right of "Indians to make their own laws and be ruled by them."[106]

If tribal courts are permitted to initiate child protection proceedings in cases arising outside of a reservation, rather than being limited to seeking transfer or intervention as provided for in Subsections 1911(b) and 1911(c), then the state's ability to protect its strong interest in the welfare of its minor Alaska Native citizens will be entirely cut off.  There are no means by which the state could protect its interests in protecting its minor citizens, virtually all of whom live outside of reservations, if tribal courts initiate protection proceedings and thereby deprive the state executive branch and state courts of the power to act.

Because the state has a compelling interest in the protection of Alaska Native children, ICWA cases do not concern purely intramural tribal matters among tribal members.  The state has an important interest in *all* child protection cases arising within its borders.  The existence of the state's compelling interest in ICWA cases takes those cases outside of the sphere of a tribe's inherent authority over "domestic relations *among members.*"

### (b)  The Interests of Non-Native or Non-Member Parents

In *Santosky*, the Supreme Court held the private interest of parents in parental rights termination proceedings is "commanding."[107]  The Court "declared it plain beyond the need for multiple citation that a natural parent's desire for and right to the companionship, care, custody, and management of his or her children is an interest far more precious than any property rights."[108]

---

[105]    *Id.* at 593.
[106]    *Id.* at 592 (quoting *Williams v. Lee*, 538 U.S. 217, 220 (1959)).
[107]    *Santosky*, 455 U.S. at 758.
[108]    *Id.* at 758-59 (quoting *Lassiter v. Dep't of Soc. Services*, 452 U.S. 18, 27 (1981) (inner quotation marks omitted).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                PAGE 24 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                          Case No. 3:06-CV 00211 (TMB)

Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 24 of 32

The Alaska Supreme Court has likewise recognized in the context of a parental termination case "that parental rights are of serious and substantial import."[109] In a Child-in-Need-of-Aid case, the court stated: "We agree that the right of parents to the care, custody and control of their children is an important and substantial right protected by . . . both the United States and Alaska Constitutions."[110] Even in cases where both parents have a history of perpetrating domestic violence against their children and themselves, a state court, in a divorce case, must award sole custody of the children to the parent who is less likely to perpetrate violence against the children and require the custodial parent to complete a treatment program or award custody to a suitable third person.[111] So important are these parental rights that the superior court has no authority to *terminate* parental rights in the context of a divorce or private custody case.

Kaltag in this case claims inherent sovereign authority to affect these important rights, apparently without regard to whether the parents of their member or member-eligible children are non-members of the tribe or non-Indians. Both state and federal law, however, has ruled otherwise. The Alaska Supreme Court held in *John v. Baker* that a "tribe only has subject matter jurisdiction over the internal disputes *of tribal members*."[112] ICWA cases involving the rights of non-member parents or non-Alaska Native parents are well outside of the inherent tribal authority recognized in *John v. Baker*.[113]

Similarly, the Eighth Circuit held in *Hornell Brewing Co. v. The Rosebud Sioux Tribal Court*, that "[n]either *Montana* nor its progeny purports to allow Indian

---

[109] *D.M. v. State*, 515 P.2d 1234, 1237 (Alaska 1973).
[110] *In the Matter of S.D., Jr.*, 549 P.2d 1190, 1200 (Alaska 1976) (citations omitted).
[111] AS 25.24.150(i).
[112] *John v. Baker*, 982 P.2d at 759 (emphasis added).
[113] While it is true that, in *John v. Baker*, Ms. John was a non-member of the Northway tribe, the court underscored the fact that she consented to tribal court jurisdiction. *John v. Baker*, 982 P.2d at 743. There is no mention in the opinion as to whether any party raised the issue of whether Ms. John could confer jurisdiction on Northway by consent. Nor is there any mention in the opinion that Northway's jurisdiction was challenged on the basis that Ms. John was a non-member of the tribe. Thus, that issue appears not to have been before the court in *John v. Baker*.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 25 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*          Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 25 of 32

tribes to exert civil jurisdiction over the activities or conduct of *non-Indians* occurring *outside of their reservations*."[114]  The Supreme Court in *Hicks* similarly observed that "with one minor exception [not relevant in the instant case], we have never upheld under *Montana* the extension of tribal civil authority over nonmembers on non-Indian land."[115]

Alaska tribes without Indian country do have the right to adjudicate child protection proceedings, even against nonmembers, but *only* under the limits set by Subsection 1911(b): A tribe may adjudicate child protection cases arising outside of Indian country only by way of transfer from state court, subject to the unfettered parental discretion to veto tribal court jurisdiction and the good cause exception to deny transfer. As explained above, however, such tribes have no inherent authority to *initiate* child protection proceedings affecting the rights of non-members domiciled off-reservation.

### 3.    *John v. Baker I* does not support the tribes' claim of inherent authority to initiate tribal adoptions.

Kaltag may argue that its claim of inherent authority to initiate tribal adoptions is supported by the holding of *John v. Baker I*.  That holding, however, did not hold that tribes have inherent concurrent jurisdiction with the state over all domestic relations matters concerning tribal members regardless of the interests of the state or non-Indian or non-member third parties.[116]  Instead, *John I* decided only "whether tribal courts have jurisdiction over *non*-ICWA Act child custody cases arising outside of Indian country".[117]  Moreover, *John I* refused to address tribal inherent authority in the context of the Act.

If *John I* had implicitly recognized the inherent authority of tribes to initiate

---

[114]    133 F.3d 1087, 1091 (8th Cir. 1998).  For purposes of the exercise of inherent tribal sovereignty over persons, non-member Indians "stand on the same footing as non-Indians…." *Washington v. Confederated Tribes of Colville Indian Reservation,* 447 U.S. 134, 161 (1980).

[115]    *Hicks*, 533 U.S. at 364.

[116]    Indeed, in John v. Baker III,  the court refused to extend its holding in John I to hold that Alaska tribes exercising jurisdiction over private *custody* cases have inherent authority to issue *child support* orders.

[117]    *Id.* (emphasis added).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 26 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                                     Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 26 of 32

child protection proceedings, then the *C.R.H.* case would have been decided on that basis. The court in *C.R.H.* was asked to reconsider the *Nenana* line of cases and hold that Alaska Native tribes "retain jurisdiction concurrent with that of the state" to adjudicate ICWA cases arising outside of tribal reservations.[118] Although the court made several references to its *John I* decision, the court limited its holding in *C.R.H.* to the recognition of transfer jurisdiction under Subsection 1911(b). If *John I* stood for the proposition that tribes have inherent authority to *initiate* child protection proceedings, *C.R.H.* would have reversed the *Nenana* line of case *in toto*, an option the court was asked to consider but expressly refused to exercise.[119]

      *John I* does not support Kaltag's claim of inherent authority to initiate tribal adoptions for three other reasons. First, under the facts of *John I* , the parents' participation in the tribal proceeding was voluntary. *John I* stressed (especially in response to the criticisms of the dissenting justices) that the use of tribal courts to decide private custody disputes among tribal members was purely voluntary on the part of the parents. The first two sentences of the opinion establish that Mr. Baker *voluntarily* initiated the private custody case in tribal court and that Ms. John *consented* to the tribal court's jurisdiction.[120] The court noted that its opinion would preserve "the right of access to state courts" for all Alaska Native parents[121] and underscored that the decision to have private custody matters decided in tribal court would be left *entirely* to the discretion of Alaska Native parents.

> Indeed, Alaska Natives who for *any reason* do not wish to have their disputes adjudicated in a tribal court will retain *complete and total access* to the state judicial system.[122]

---

    [118]     *C.R.H.*, 29 P.3d at 852.
    [119]     *Id.* at 852 ("Nikolai urges us to reconsider *Nenana*'s interpretation of Public Law 280, and to hold that Alaska Native tribes . . . retain jurisdiction concurrent with that of the state. We need not reach this issue . . . .").
    [120]     *John v. Baker*, 982 P.2d at 743.
    [121]     *Id.* at 760.
    [122]     *Id.* at 761 (emphasis added).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT      PAGE 27 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*      Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 27 of 32

The court rejected the dissent's allegation that it was creating a system of "mandatory tribal court jurisdiction."[123]

Yet "mandatory tribal court jurisdiction" over Alaska Native and non-Native parents in ICWA child protection cases is what the plaintiff tribes in this case seek. Child protection cases are *involuntary* in nature, as the Act's definition of "child custody proceeding" makes clear: Indian Child Welfare Act cases concern the foster care placement of children "where the parent or Indian custodian cannot have the child returned upon demand," termination of parental rights and the placement of children "after the termination of parental rights."[124] Thus, Kaltag in this case cannot seek to involuntarily impose their jurisdiction on Alaska Natives and non-Natives under the guise of *John I*, which was premised, in part, on the principle that parents of Alaska Native children would be free to choose whether a tribal court would decide their custody disputes. Indeed, a decision favoring Kaltag would not only undermine the principle of voluntary parental participation in tribal court announced in *John I*, it would undermine Subsection 1911(b), which grants parents an absolute right to choose which court (tribal or state) will adjudicate child protection proceedings when they and their children are domiciled outside of a reservation.

There is no legal basis for tribal power to abrogate the parental autonomy right granted by Congress to the parents of Alaska Native children. The recognition of this right-abrogating tribal power would turn the plenary power of Congress over Indian affairs on its head, subjecting Congress to the will of a tribe in the name of inherent tribal sovereignty.

Second, consistent with the federal cases cited by the court dealing with inherent tribal sovereignty, the Alaska Supreme Court stressed throughout its opinion in *John I* that its ruling applied only in private custody disputes that were *purely internal* to

_____

[123]    *Id.*  (inner quotation marks omitted).
[124]    Subsection 1903 (1).

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT          PAGE 28 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                     Case No. 3:06-CV 00211 (TMB)

Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 28 of 32

the tribe. The court addressed whether Alaska tribes have "non-territorial sovereignty . . . to resolve domestic dispute *between* their members"[125] and repeatedly stated that the tribal jurisdiction it was recognizing was jurisdiction over *purely internal* custody matters among members of the tribe,[126] succinctly concluding that "the tribe *only* has subject matter jurisdiction over the *internal disputes* of tribal members."[127] *John I* did not decide whether tribes have inherent authority to decide cases where the direct and compelling interests of non-tribal, non-member parties (like the state and non-Indian parents) are at stake.

While tribes may have inherent authority to adjudicate purely internal matters, ICWA child protection proceedings are not internal matters of the tribe solely concerning the interests of the tribe and its members. The state's compelling interest in protecting its children was not at stake in *John I*. The state was not a party to that case.[128] In addition, the case involved a private child custody matter between unmarried parents[129]

---

[125]    *John v. Baker*, 982 P.2d at 748 (emphasis added).
[126]    *Id*. at 743 ("between tribal members"), 744 ("between members"), 748 ("*Internal Child Custody Disputes*") (in subtitle; italics in original), 748 ("domestic disputes between their *own* members") (emphasis added), 751 ("*internal domestic affairs*") (in subtitle; italics in original), 751 ("internal functions involving . . . domestic affairs"), 752 ("internal governmental authority"), 752 ("tribal control over "*internal relations*") (italics in original), 752 (Tribes have sovereignty "to control internal relations") (inner quotation marks omitted), 753 ("Congress did not intend for ANCSA to divest tribes of their powers to adjudicate domestic disputes *between* members.") (emphasis added), 753 (Alaska Natives may "regulate their internal affairs"), 754 (federal law recognizes that tribes may "adjudicate internal domestic matters"), 755 (Tribes may regulate "their internal and social relations"), 755 (Core tribal power exists "to regulate internal affairs"), 755 (noting that "*the powers of self-government . . . involve only the relations among members of a tribe*.") (italics in original), 755 (noting tribal power "to regulate internal domestic relations"), 755 (Tribes have power "to regulate domestic relations among members."), 756 ("Tribes have power to make their own substantive law in internal matters . . . .") (quotation marks and citation omitted), 756 (federal cases recognize tribal "power to adjudicate internal child custody disputes."), 758 (The Supreme Court has left "the door open for tribal governments to conduct internal self-governance."), 759 (Tribes may "adjudicate internal family law affairs like child custody disputes."), 759 (Tribes without Indian country "possess the power to adjudicate internal self-governance matters" and "to regulate the internal affairs of its members.") 759 (Tribes' "inherent sovereignty to adjudicate internal domestic custody matters depends on the membership . . . of the child.).
[127]    *Id*. at 759. (emphasis added).
[128]    The state did participate as an amicus.
[129]    *John v. Baker*, 982 P.2d at 743 (noting that Mr. Baker and Ms. John were "never married.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                PAGE 29 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                                              Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB    Document 32    Filed 05/15/07    Page 29 of 32

so even the state's interest in marriage, divorce-custody and adoption proceedings was not implicated in *John I*.[130]  Because the state has strong interests in *all* child protection proceedings outside of Indian country, and because the adjudicative jurisdiction of tribal courts does not extend (even in Indian country) to the actions of state officials applying and enforcing state child protection laws,[131] a tribe's initiation of ICWA child protection proceedings outside of Indian country is not a matter that concerns purely intramural tribal matters.

Third, the court in *John I* noted that "[b]ecause the traditional reservation-based structure of tribal life in most states forms the backdrop for the federal cases [addressing tribal jurisdiction], courts have not had occasion to tease apart the ideas of land-based sovereignty and membership sovereignty."[132]  *John I* went on to tease those concepts apart in the context a non-ICWA private custody dispute among members of a tribe where both parents consented to tribal court jurisdiction.

Relying on *John I* to support the exercise of tribal jurisdiction in a child protection case based *solely* on tribal membership and entirely without regard to the presence or absence of Indian country is contrary to the structure of Sections 1911 and 1922, both of which adopt the "traditional reservation-based structure" of tribal jurisdiction to determine which courts (state or tribal) may exercise jurisdiction. The Indian Child Welfare Act determines jurisdiction, not based solely on membership, but

---

[130]     *See Flores v. Flores*, 598 P.2d 893, 895 (Alaska 1979) ("There is a strong state interest in divorce-child custody proceedings.  Unlike commercial contracts, legally binding marriages and divorces are wholly creations of the state."); *In the Matter of K.L.J.*, 813 P.2d 276, 283 (Alaska 1991) ("Adoption, like marriage and divorce, is wholly a creature of the state" and although "'[a] stepparent adoption differs from other parental termination cases . . . neither is the adoption a *purely* private dispute. The state is called upon to exercise its exclusive authority to terminate the legal relationship of parent and child . . . .'") (quoting *In re Jay [R.]*, 197 Cal. Rptr. 672, 680 (Cal. App. 1983)) (other citations omitted).

[131]     *Nevada v. Hicks*, 533 U.S. at 364 ("We conclude today, in accordance with these prior statements, that tribal authority to regulate state officers in executing process related to the violation, off reservation, of state laws is not essential to tribal self-government or to internal relations -- to 'the right to make laws and be ruled by them.'") (paraphrasing, but not citing, *Williams v. Lee*, 358 U.S. 217, 220 (1959)).

[132]     *Id.* at 754.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 30 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                                            Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 30 of 32

on the interplay between membership, domicile either on or off an Indian reservation and the status of the child as an Indian or Alaska Native.  And, as noted above, in the "traditional reservation-based structure," "[n]either *Montana* [which was one of the principal federal cases relied on in *John I* for the proposition that tribes retain inherent authority over their members] nor its progeny purports to allow Indian tribes to exert civil jurisdiction over the activities or conduct of non-Indians occurring *outside their reservations*."[133]

Given the absence of Indian country in most of this state, the state has a compelling interest in every child protection proceeding arising within Alaska. Tribes cannot disregard the Act's structure and exercise jurisdiction in child protection cases based solely on their inherent authority over purely intramural matters concerning their members.  Because the Act *requires* the presence or absence of Indian country to be taken into account, it is entirely inappropriate to read into the Act *John I*'s holding that Alaska tribes may exercise inherent jurisdiction over non-ICWA private custody disputes.  Congress, exercising its plenary power, has chosen a different path in the Act, giving tribes exclusive jurisdiction over cases arising in their reservations, but only transfer jurisdiction for cases arising outside of Indian country subject to parental veto or good cause not to transfer, if it exists.   As the court in *Multnomah County* stated in the context of Section 1922, "[e]mergency removal . . . is *initially* purely a state law matter . . . ."[134]  Tribal courts have the right to receive transfer of state-initiated cases under certain circumstances, but not the right to initiate them or to take emergency custody of children living outside of a reservation.

Nothing in *John I* indicates that the court in that case implicitly recognized an inherent authority in Alaska Native villages to initiate child protection proceedings concerning Indian children domiciled outside of Indian Country.

---

[133]     *Hornell Brewing*, 133 F.3d at 1091 (emphasis in original).
[134]     *Multnomah County*, 688 P.2d at 1358.

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 31 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                                          Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 31 of 32

**Conclusion**

For the reasons state above, Defendants respectfully request the court to dismiss Plaintiffs' case against them. Because Plaintiffs' requested relief impacts special sovereignty interests to the extent that the suit is, in reality, against the state, the case violates the Eleventh Amendment. Alternatively, the case should be dismissed because Kaltag has no jurisdiction to initiate child protection cases.

Dated this 15th day of May, 2007

TALIS J. COLBERG
ATTORNEY GENERAL


By:   s/Jan A. Rutherdale
      Assistant Attorney General
      Office of the Attorney General
      P.O. Box 110300
      Juneau, Alaska 99811
      Phone: (907) 465-3600
      Fax:  (907) 465-2539
      Jan_Rutherdale@law.state.ak.us
      Alaska Bar No. 8308081


<u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 15, 2007, a copy of the foregoing MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT was served electronically on the following parties of record:

Natalie A. Landreth, Esq.
Heather Kendall-Miller, Esq.
Native American Rights Fund
420 L. Street, Suite 505
Anchorage, AK 99501

MEMORANDUM IN SUPPORT OF MOTION FOR SUMMARY JUDGMENT                    PAGE 32 OF 32
*KALTAG TRIBAL COUNCIL. vs. DHSS, et. al.*                    Case No. 3:06-CV 00211 (TMB)
Case 3:06-cv-00211-TMB   Document 32   Filed 05/15/07   Page 32 of 32